**Ralph CLARK, Appellant,**

v.

**RANDALLS FOOD, Appellee.**[1]

No. 01–08–00732–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 25, 2010.

1. Appellee's counsel informed the court that appellee's proper name is Randalls Food & Drug, L.P., not Randalls Food.

———

Christopher Bradshaw–Hull, Attorney at Law, Houston, TX, for appellant.

Bart Walter Basden, Johanson & Fairless, Sugar Land, TX, for appellee.

Panel consists of Chief Justice RADACK, and Justices ALCALA and HIGLEY.

## OPINION

ELSA ALCALA, Justice.

Appellant, Ralph Clark, appeals a final judgment ordering he take nothing from appellee, Randalls Food (Randalls). In his sole issue, Clark contends the trial court erred by granting Randalls's summary judgment motion because he established that Randalls spoliated evidence. We conclude that the trial court did not abuse its discretion by determining as a matter of law that evidence was not spoliated, and that it properly rendered summary judgment in favor of Randalls because Clark presented no evidence raising an issue of fact on the elements for premises liability. We affirm the trial court's judgment.

## Background

In March 2005, Clark fell while walking away from a pharmacy counter at a Randalls grocery store in Kingwood, Texas. Clark slipped on liquid detergent that had leaked from a broken container in another customer's basket. Clark landed on his right arm and torso. He did not receive medical care at the scene but sought medical attention the next day. Store employees filled out an accident report and notified Randalls's claims department. The forms indicated the surveillance footage taken at the time of the fall was preserved at the manager's station.

Less than a week after the incident, communication with Clark indicated he might hire an attorney. Matthew Johnston, a senior claims adjuster for Randalls, acknowledged the company was aware soon after the accident occurred that Clark might sue because there is always a substantial chance of a claim when a customer has an accident.

Although no one had requested preservation of the videotape of Clark's fall, Johnston left a message with the Kingwood store asking them to preserve the surveillance video. Johnston also informed the Kingwood store that if the store was not aware of the detergent or if the spill had not been there a long time prior to the fall, Randalls would not be liable. An employee from Randalls loss prevention went to the Kingwood location to assist the store in making a copy of the video.

When the copy of the surveillance video was made, only a portion of the surveillance video was copied. It is unclear who determined how much footage to preserve and why the specific times were chosen. The tape preserved by Randalls included footage from 2:59 p.m. until 3:05 p.m., with the fall occurring 45 seconds after 3:00 p.m. The footage started when Clark approached the counter and ended a short time after the fall.

Over four months after the accident, Clark's attorney first contacted Randalls and requested a settlement. Randalls had deemed the incident closed because Clark had failed to respond to Randalls's attempts at communication. By the time Clark's attorney contacted Randalls, any footage not previously saved had been erased by the store pursuant to Randalls's normal procedure to preserve tapes for 60

to 90 days only. After Clark requested the settlement, the claims department reopened the case and it viewed the video for the first time.

Eighteen months after the fall, and after Randalls's denial of Clark's settlement request, Clark filed suit against Randalls. Denying it had prior knowledge of the liquid on the floor, Randalls responded to the lawsuit with a matter-of-law and no-evidence motion for summary judgment.[2] In its motion for summary judgment, Randalls presented an interrogatory response given by Clark, an affidavit of a pharmacy technician present at the time of the incident, and an affidavit of the service manager on duty at the time Clark fell. Both affidavits stated that Randalls employees had not been informed of the liquid by customers nor had they seen liquids on the floor prior to the incident. The affidavit of the store service manager stated that a walk-through of the store to check for hazards was conducted about an hour prior to the incident, and no substances or spills were found.

Along with his response to the summary judgment motion, Clark filed a motion for sanctions for spoliation for footage missing from the surveillance video showing more of the time preceding Clark's fall. Clark requested the court grant a default judgment against Randalls, or declare the video as presumptively adverse and unfavorable to Clark so as to defeat Randalls's motion for summary judgment. Clark's motion for a spoliation finding asserts that the failure to preserve footage prior to one minute and 46 seconds before Clark fell means that Randalls destroyed evidence that may have been favorable to Clark's premises liability claim. For example, Clark contends the missing footage may have shown an employee walking down the aisle and observing the liquid or have

shown that an employee performed the hourly walk-through of the store to check for hazards on the selling floor. Clark also asserts the footage may have shown the time the customer pushing the detergent-leaking cart walked past the counter, which would give an idea about how long the spill was present.

The video of Clark's fall was included as part of the record presented to the trial court. The video appeared to have been captured by a stationary camera mounted behind the pharmacy counter, which blocked the view of most of the floor where Clark stood. The video showed Clark as he engaged in a transaction at the counter before he turned away from the counter and fell. The only parts of the floor that were visible on the tape were the parts further away from the counter and just beyond where Clark fell. Due to the tape's quality, no liquid was visible anywhere on the tape.

The trial court denied Clark's motions for sanctions due to spoliation of evidence, granted Randalls's no-evidence and matter-of-law motion for summary judgment, ordered Clark take-nothing, and dismissed all causes of action with prejudice.

## Analysis

In his sole issue, Clark asserts he was entitled to either spoliation sanctions or a spoliation presumption against Randalls as a result of its failure to preserve portions of the surveillance video footage. Clark contends that since he was entitled to sanctions or a presumption, the trial court erred in granting Randalls's no-evidence and traditional motion for summary judgment.

**A. Standard of Review for Summary Judgment**

---

**2.** *See* Tex.R. Civ. P. 166a(c), 166a(i).

Although it expressly rejected Clark's request for spoliation sanctions, the trial court also implicitly denied the request by granting Randalls's motion for summary judgment. *See Adobe Land Corp. v. Griffin, L.L.C.*, 236 S.W.3d 351, 356–57 (Tex. App.-Fort Worth 2007, pet. denied) (citing *Aguirre v. S. Tex. Blood & Tissue Ctr.*, 2 S.W.3d 454, 457 (Tex.App.-San Antonio 1999, pet. denied)); *Sowell v. The Kroger Co.*, 263 S.W.3d 36, 37–38 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (citing *Aguirre*, 2 S.W.3d at 457). We, therefore, must first review whether the trial court abused its discretion by denying the motion for a finding of spoliation. *Adobe Land Corp.*, 236 S.W.3d at 357 (citing *Wal–Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 722 (Tex.2003)); *Sowell*, 263 S.W.3d at 38. If the trial court did abuse its discretion by denying the spoliation finding, then summary judgment would be improper. *Adobe Land Corp.*, 236 S.W.3d at 360–61. If, however, we determine the trial court did not abuse its discretion by denying a spoliation finding, we do not consider any presumptions related to spoliation of evidence and review the no-evidence and traditional summary judgment by examining whether there is more than a scintilla of evidence to preclude summary judgment. *Id.* at 357 (citing *Aguirre*, 2 S.W.3d at 457); *Sowell*, 263 S.W.3d at 38. Here, Clark's sole challenge to the motion for summary judgment concerns the trial court's refusal to make a spoliation finding; he does not contend that without the finding there is more than a scintilla of evidence to preclude summary judgment.

■ To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Mercedes–Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex.1996). An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence. *In re Barber*, 982 S.W.2d 364, 366 (Tex.1998). However, a trial court has no discretion in determining what the law is or in applying the law to the facts. *Adobe Land Corp.*, 236 S.W.3d at 357.

## B. Applicable Law Concerning Spoliation

■ The act of spoliation refers to destruction of evidence relevant to a case. *Buckeye Ret. Co. v. Bank of Am., N.A.*, 239 S.W.3d 394, 401 (Tex.App.-Dallas 2007, no pet.). Trial courts have broad discretion in taking measures to address spoliation of evidence that include "measures ranging from a jury instruction on the spoliation presumption to, in the most egregious cases, death penalty sanctions." *Trevino v. Ortega*, 969 S.W.2d 950, 953 (Tex.1998). "As with any discovery abuse or evidentiary issue, there is no one remedy that is appropriate for every incidence of spoliation; the trial court must respond appropriately based upon the particular facts of each individual case." *Id.*

■ The inquiry as to whether a spoliation sanction or presumption is justified requires a court to consider (1) whether there was a duty to preserve evidence, (2) whether the alleged spoliator breached that duty; and (3) whether the spoliation prejudiced the non-spoliator's ability to present its case or defense. *Adobe Land Corp.*, 236 S.W.3d at 357; *Offshore Pipelines, Inc. v. Schooley*, 984 S.W.2d 654, 666 (Tex.App.-Houston [1st Dist.] 1998, no pet.).

### 1. Duty to Preserve Evidence

■ The duty to preserve evidence is not raised unless (a) a party knows or reasonably should know that there is a substantial chance a claim will be filed, and

(b) evidence is relevant and material. *See Johnson,* 106 S.W.3d at 722.

### a. Knowledge of Claim

■ To prevail on the first prong, Clark suggests he has shown Randalls knew or reasonably should have known there was a substantial chance that Clark would file a premises liability claim. *See id.* A party can anticipate litigation before it receives actual notice of potential litigation. *Nat'l. Tank Co. v. Brotherton,* 851 S.W.2d 193, 204 (Tex.1993). "[C]ommon sense dictates that a party may reasonably anticipate suit being filed ... [even] before the Plaintiff manifests an intent to sue." *Id.* Clark points to Randalls's answer to the following interrogatory, which asks "when did Randalls first believe that there was a substantial chance that Mr. Clark would file a claim?" Randalls answered, "[a]fter [Clark] fell, it was known that he might pursue a claim or file a lawsuit as in Randalls's business, customer accidents result in the substantial chance of a claim in each occurrence." Because Randalls acknowledged it knew there was a "substantial chance" a claim would be filed, we conclude the undisputed evidence shows Clark established the first prong. *See Johnson,* 106 S.W.3d at 722.

### b. Relevance of Material

■ To prevail on the second prong, Clark must show that Randalls knew or should have reasonably known that the footage would be relevant to the action. *See id.* A party must preserve what it knows, or reasonably should know is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, or is the subject of a pending discovery sanction. *Trevino,* 969 S.W.2d at 957 (Baker, J., concurring). Evidence is relevant if it has

"any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R. Evid. 401. If there is some logical connection either directly or by inference between the evidence and a fact to be proved, the evidence is relevant. *See Serv. Lloyds Ins. Co. v. Martin,* 855 S.W.2d 816, 822 (Tex.App.-Dallas 1993, no writ). The four elements of a premises liability cause of action are:

(1) the owner had actual or constructive knowledge of some condition on the premises;

(2) the condition posed an unreasonable risk of harm;

(3) the owner did not exercise reasonable care to reduce or eliminate the risk of harm; and

(4) the owner's failure to use such care proximately caused the plaintiff's injuries.

*LMB, Ltd. v. Moreno,* 201 S.W.3d 686, 688 (Tex.2006). Randalls's motion for summary judgment challenges the first, third, and fourth of these elements.

■ Temporal evidence is also relevant to premises liability claims. *See Wal–Mart Stores, Inc. v. Reece,* 81 S.W.3d 812, 815 (Tex.2002). If evidence does not show actual knowledge of a dangerous condition, we require proof that a dangerous condition existed for some length of time before a premises owner may be charged with constructive notice. *See id.* This so called "time-notice rule" is based on the premise that temporal evidence best indicates whether the owner had a reasonable opportunity to discover and remedy a dangerous condition. *Id.* at 816. Even if an employee had proximity to the hazard, without some temporal evidence, there is no basis upon which the fact finder can reasonably assess the opportunity the

premises owner had to discover the dangerous condition. *Id.*

■■■ Clark points out that Johnston told the store management, "[u]nless we were aware of the spilled detergent or it had been there a long time we are not liable." The record undisputedly shows, therefore, that Randalls was aware of the importance of the temporal element of Clark's claim, and that their actual or constructive awareness of the spill would be material to Clark's claim. *See Moreno,* 201 S.W.3d at 688.

Randalls contends the tape lacked relevance because it does not show the floor where Clark fell. Randalls's response to the motion for sanctions for spoliation states,

> The video camera angle does not show the floor directly in front of the pharmacy because the floor is blocked by the pharmacy counter. Although the video camera may have captured people that walk by in front of the pharmacy, it is apparent from the angle of the video camera, that there would have been no way to tell whether any particular person's cart was leaking any liquid.... Furthermore, even if the video footage that was destroyed did not show any employees walking in front of the pharmacy counter, that is not proof that Defendant's employees did not perform the hourly walkthrough of the Defendant's premises.

Because it relies on the hourly walk though to show it did not know about the spill, at least one hour of the footage of the events preceding Clark's fall was relevant, and that portion of tape should have been preserved. Although the video does not show the floor where Clark fell, it would, for example, show whether someone else slipped or almost slipped at the same location in the hour before Clark fell. If someone had previously slipped there,

then that would show how long the substance had been there. If someone had not previously slipped there, then that would suggest the substance was not there long before Clark fell. The footage of the one hour preceding Clark's fall, therefore, has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* TEX.R. EVID. 401. We hold Randalls knew the events for the one hour preceding Clark's fall were relevant. *See Trevino,* 969 S.W.2d at 957 (Baker, J., concurring) (noting that party should preserve what it reasonably should know is likely to be requested during discovery).

The record conclusively shows that Randalls knew of an impending claim, and was aware that footage of events preceding Clark's fall was relevant to Clark's claim. We, therefore, hold Randalls had a duty to preserve the footage preceding Clark's fall.

### 2. Breach of Duty

■■■■ Having concluding that Randalls had a duty to preserve the video footage, we must now determine whether Randalls breached that duty. *See id.; Adobe Land Corp.,* 236 S.W.3d at 359. While parties need not take extraordinary measures to preserve evidence, they have a duty to exercise reasonable care in preserving potentially relevant evidence. *Id.* The burden of the prejudicial effects associated with the failure to preserve evidence is placed on the culpable spoliating party rather than the innocent non-spoliating party. *Id.* A spoliator, however, can defend against an assertion of negligent or intentional destruction by providing other explanations to justify its failure to preserve evidence. *Id.*

As discussed above, the record shows that Randalls knew it had a duty to preserve relevant footage preceding Clark's fall within five days after Clark fell. When the entire video of events preceding the fall was still available for preservation, Randalls only preserved footage that captures Clark as he first approaches the counter, his fall, and the minutes that followed. In this case, Randalls's duty to preserve arose well before it destroyed the relevant footage pursuant to its retention policy to keep tapes for 60 to 90 days only. Because Randalls had a duty to preserve the footage before it destroyed the footage, we hold Randalls breached its duty to exercise reasonable care in preserving evidence. *Id.* at 360.

### 3. Prejudice

The final step of our inquiry focuses on whether Randalls's spoliation prejudiced Clark's ability to present his case. *See Schooley*, 984 S.W.2d at 666 (citing *Trevino*, 969 S.W.2d at 954–55) (Baker, J., concurring); *Adobe Land Corp.*, 236 S.W.3d at 360. "[T]he spoliating party is [ ] free to attempt to show that . . . no prejudice" resulted from the "negligently destroyed evidence." *Trevino*, 969 S.W.2d at 958 (Baker, J., concurring). In making this determination, we look to a variety of circumstances such as (a) the harmful effect of the missing evidence, and (b) the availability of other evidence to take the place of the missing information. *Adobe Land Corp.*, 236 S.W.3d at 360; *Schooley*, 984 S.W.2d at 667.

#### a. Harmful Effect of Missing Evidence

Having already determined the footage not preserved by Randalls was relevant to the premises liability lawsuit, we must address how the failure to preserve it has prejudiced Clark's lawsuit. In

determining whether a party was harmed by spoliated evidence, we consider "whether the destroyed evidence supports key issues in the case." *Trevino*, 969 S.W.2d at 958 (Baker, J., concurring).

The trial court could reasonably have determined that the missing videotape footage was not evidence that supports key issues in the case because the key issue here is whether there was liquid on the floor, and the camera was unable to capture whether there was liquid on the floor and when it may have gotten there. For example, if the tape showed an employee performing a walk-though one hour before the event, that would not reveal whether the employee saw the liquid because the tape of Clark's fall does not show any visible liquid. Similarly, if the tape showed no employee was seen performing a walk-through one hour before the event, a walk-though could still have occurred at that area with the employee standing nearby but outside of the camera range. The trial court could have reasonably determined that because the counter blocks the camera's visibility of the floor where Clark fell, the camera would not have captured the liquid falling on the floor. Although the tape is relevant, the trial court could have reasonably determined it had limited value in the case because the tape is unclear, it does not show any liquid on the part of the floor that can be seen on the tape, and due to the angle of the camera and the height of the counter, it does not show the part of the floor where Clark fell.

As noted above, the primary significance of this tape is that it would show whether another person at this location slipped prior to Clark at the same location. But nothing in our record suggests that another person slipped there before Clark. The pharmacist, the other people working at the pharmacy counter, and the store manager do not mention any other complaints

about people slipping there. The trial court could reasonably have determined that the tape would not show anyone else slipping at the location before Clark because the other evidence in the case fails to suggest that occurred.

### b. Availability of Other Evidence

As Randalls points out, there was evidence other than the tape to show the condition of the floor. The pharmacist and Clark could each testify about the condition of the floor when Clark fell. The store manager described the walk-through procedures to check the condition of the floor in the hour preceding the fall. Even if the tape had been produced and the walk through was not visible on the tape, the walk though could have been conducted outside of camera range, given that the stationary camera captured only a limited range. As noted above, the primary significance of this tape is that it would show whether another person at this location slipped prior to Clark at the same location, but the tape is not the only evidence that would show that, and the people working in that area did not mention any complaints about people slipping there. The trial court, therefore, could have reasonably determined the unavailable footage was cumulative of other competent evidence that Clark could use in place of the destroyed evidence. *See Trevino,* 969 S.W.2d at 958 (Baker, J., concurring).

The trial court could have reasonably determined Randalls was not negligent in its failure to preserve more of the tape of the events preceding the fall. Importantly, Clark never asked Randalls to preserve the tape until after the tapes had been destroyed pursuant to Randalls policy. Randalls, sua sponte, preserved the tape in the anticipation of litigation by Clark. Randalls had to independently surmise how much of the footage Clark would want, without the benefit of any instructions or request from Clark.

We conclude that based on the arguments and evidence presented, the trial court could have reasonably determined the videotaped footage would not show whether liquid was on the floor, how long it was on the floor, whether the walk through was done, and when it was done. Based on the arguments and evidence presented in this case, we hold the trial court did not abuse its discretion by finding no prejudice resulted from Randalls's failure to preserve the footage of events preceding the fall. *See, e.g., Ordonez v. M.W. McCurdy & Co.,* 984 S.W.2d 264, 274 n. 13 (Tex.App.-Houston [1st Dist.] 1998, no pet.) (discretion not abused in denying spoliation instruction where evidence showed log books were disposed of pursuant to company policy and missing data not shown to be harmful).

We hold the trial court did not abuse its discretion in refusing to grant a spoliation finding. Because the challenge to the spoliation finding is the sole ground presented in this appeal to challenge the summary judgment ruling, we affirm the trial court's take-nothing summary judgment. *See Adobe Land Corp.,* 236 S.W.3d at 357 (citing *Aguirre,* 2 S.W.3d at 457); *Sowell,* 263 S.W.3d at 38.

We overrule Clark's sole issue.

### Conclusion

We affirm the judgment of the trial court.